IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ALABAMA
SOUTHERN DIVISION

| | | |
|---|---|---|
| BLACK WARRIOR RIVERKEEPER, INC., | } } } | |
| Plaintiff, | } } | CIVIL ACTION NO. 07-AR-1392-S |
| v. | } } | |
| CHEROKEE MINING, LLC, | } } | |
| Defendant. | } | |

**<u>MEMORANDUM OPINION</u>**

On July 27, 2007, Black Warrior Riverkeeper, Inc., ("BWR") filed the above-styled citizen suit against Cherokee Mining, LLC, ("CM") alleging violations by CM of sections 301 and 402 of the Clean Water Act ("CWA"), 33 U.S.C. §§ 1311, 1342, certain provisions of the Code of Federal Regulations, and similar provisions of Alabama law. CM now moves to dismiss the action, invoking Fed. R. Civ. P. 12(b)(1), arguing that the court lacks subject matter jurisdiction because the citizen suit is moot, and invoking Fed. R. Civ. P. 12(b)(6) or 56, arguing that *res judicata* bars the suit. The parties have extensively briefed the issues, and, at the invitation of the court, the Alabama Department of Environmental Management ("ADEM") has submitted a position statement. The court heard oral argument on May 8, 2009, and allowed ADEM to participate *amicus curiae*. For the reasons that follow, CM's motion to dismiss will be granted.

### Pertinent Facts[1]

CM owns and operates the Praco Mine, a coal mine located in Jefferson and Walker Counties within the Northern District of Alabama. CM received notification from ADEM on September 29, 2006, and again on April 13, 2007, that the Praco Mine was committing violations of its National Pollutant Discharge Elimination System ("NPDES") permit by emitting pollutants into tributaries of the Black Warrior River.  Such violations of CM's NPDES permit would constitute violations of the CWA, 33 U.S.C. §§ 1311, 1342, and corresponding provisions of Alabama law. ADEM conducted an on-site inspection of the Praco Mine on March 7, 2007, and issued a warning letter, which was received by CM on March 12, 2007.

BWR, a non-profit corporation dedicated to the preservation of the Black Warrior River and to ensuring the enforcement of environmental laws that may affect the Black Warrior, issued a 60-

---

[1]    Attacks on subject matter jurisdiction under Fed. R. Civ. P. 12(b)(1) come in two forms: "facial attacks," which require the court to pass on whether "plaintiff has sufficiently alleged a basis of subject matter jurisdiction," and "factual attacks," which "challenge the existence of subject matter jurisdiction in fact, irrespective of the pleadings." *See Lawrence v. Dunbar*, 919 F.2d 1525, 1529 (11th Cir. 1990). Here, the court is dealing with a factual attack.

The trial court may proceed as it never could under 12(b)(6) or Fed. R. Civ. P. 56. Because at issue in a factual 12(b)(1) motion is the trial court's jurisdiction – its very power to hear the case – there is substantial authority that the trial court is free to weigh the evidence and satisfy itself as to the existence of its power to hear the case. In short, no presumptive truthfulness attaches to plaintiff's allegations, and the existence of disputed material facts will not preclude the trial court from evaluating for itself the merits of jurisdictional claims.

*Id.* (quoting *Mortensen v. First Fed. Sav. & Loan Ass'n*, 549 F.2d 884, 891 (3rd Cir. 1977)).

day notice on May 16, 2007, stating its intent to bring an action against CM regarding the above-referenced alleged effluent violations. This letter fully complied with the CWA's notice requirements for citizen suits. *See* 33 U.S.C. § 1365(b)(1)(A). On July 20, 2007, several days before BWR filed suit, CM received notification from ADEM that ADEM was commencing administrative enforcement proceedings against CM regarding the violations. ADEM proposed an order that would address the violations if consented to. Specifically, the notification stated that "the alleged violations are appropriate for resolution by Consent Order, a mechanism by which you may agree to certain terms and conditions to resolve the violations without the need for more aggressive enforcement and litigation." (Def.'s Ex. C). On July 27, 2007, 72 days after it gave notice of its intent to sue, BWR filed its citizen complaint. *See* 33 U.S.C. § 1365. Briefly stated, BWR requested relief in the form of an injunction, $31,500.00 in civil penalties against CM for each violation, general costs and attorney fees.

On August 3, 2007, while BWR's suit was pending, CM executed an administrative consent order with ADEM. After a required public notice and comment period, in which BWR chose not to take part, ADEM, on September 24, 2007, executed and thereby finalized the proposed order. It required CM to pay a monetary penalty in the amount of $15,000 and to take several steps to prevent future

violations.

During the course of BWR's suit, the court invited ADEM to submit a position statement. In response, ADEM stated that the consent order has become final, that CM has complied with it, and that, since October 26, 2007, CM has had only one effluent violation, namely, 0.04 mg/l above the daily average for iron. This relatively innocuous event occurred in February 2008 (the "February violation"), and there have been no further violations detected. ADEM attests that the consent order has been effective in returning CM to compliance, and takes the position, as does CM, that BWR's citizen suit has, as a result of the ADEM order, become moot. BWR asserts, to the contrary, that, in addition to CM's February violation, CM has changed its sampling procedure in a manner that raises serious questions about CM's actual and continuing compliance. In other words, BWR wants to use this suit to look into and punish shortcomings suspected by BWR, even if not charged as a violation in the original complaint, and that have occurred, if they occurred, long after the ADEM consent order was entered.

This is not the first time BWR's right to maintain this citizen suit has been challenged. Shortly after the case was filed, CM moved to dismiss the action for lack of subject matter jurisdiction, arguing that the suit was barred by section 1319(g)(6)(A)(ii) of the CWA. This court denied CM's motion. After this court certified the jurisdictional question for interlocutory

-4-

review pursuant to 28 U.S.C. § 1292(b), the Eleventh Circuit upheld this court's ruling. *See Black Warrior Riverkeeper v. Cherokee Mining, LLC.*, 548 F.3d 986 (11th Cir. 2008), *reh'g denied*, 309 Fed. Appx. 387 (Table). The issues addressed by the Eleventh Circuit in the earlier appeal are only distantly related, if related at all, to the issues now before this court.

## Analysis

Under Article III of the Constitution, federal courts can only entertain "cases or controversies." *Lujan v. Defenders of Wildlife*, 504 U.S. 555, 559-60 (1992). "[T]he requisite personal interest that must exist at the commencement of the litigation (standing) must continue throughout its existence (mootness). . . . A case is moot when it no longer presents a live controversy with respect to which the court can give meaningful relief." *Frulla v. CRA Holdings, Inc.,* 543 F.3d 1247, 1250-51 (11th Cir. 2008). If this case has been rendered moot during its pendency, even though a "case or controversy" admittedly existed at its inception, the court no longer has constitutional authority to resolve issues that have been resolved. The court necessarily addresses this threshold issue. The court will not address the much more complicated *res judicata* issue.[2]

_____

[2] Although it is true that there is some precedent allowing a federal court leeway "to choose among threshold grounds for denying audience to a case on the merits," *see Sinochem Int'l Co. v. Malaysia Int'l Shipping Corp.*, 549 U.S. 422, 431 (2007), and CM urges the court to dismiss on the basis of *res judicata*, the court will address the mootness inquiry, because the *res judicata* defense does not present "a textbook case for immediate

As a general rule, "[w]hen events subsequent to the commencement of a lawsuit create a situation in which the court can no longer give the plaintiff meaningful relief, the case is moot and must be dismissed." *Fla. Ass'n of Rehab. Facilities v. State of Fla. Dep't of Health and Rehabilitative Serv., et al.*, 225 F.3d 1208, 1217 (11th Cir. 2000). CM and ADEM both assert without equivocation that the ADEM-negotiated consent order renders moot BWR's citizen suit, because BWR seeks remedies that have been put in place by ADEM in response to the same nucleus of operative facts. In other words, CM and ADEM argue that by virtue of the statutory and regulatory procedure initiated and pursued to conclusion by ADEM, this pre-existing "case or controversy" was meaningfully and satisfactorily resolved. BWR's response focuses on the February 2008 violation that occurred after the consent order, and on CM's change in sampling procedure. Specifically, BWR argues that these two facts prevent CM from meeting the heavy burden of proving mootness, namely, its burden of making it "*absolutely clear that the allegedly wrongful behavior could not reasonably be expected to recur,*" citing *Gwaltney of Smithfield v. Chesapeake Bay Foundation, Inc.,* 484 U.S. 49, 66 (1987). BWR's argument is based upon an inappropriate or erroneous understanding of the mootness test. And, even if BWR's version of the test were employed, CM does not fail it.

---

dismissal" on the facts. *See id.* at 435.

The test for mootness that BWR presses upon the court comes from cases in which the defendant **voluntarily** ceased CWA violations subsequent to the commencement of a citizen suit. *See Friends of the Earth, Inc. v. Laidlaw Envtl. Serv., Inc.,* 528 U.S. 167, 189 (2000); *Gwaltney*, 484 U.S. at 66-67; *United States v. Phosphate Export Ass'n., Inc.*, 393 U.S. 199, 203 (1968). The rationale for looking askance at compliance coming only after a citizen suit has been filed is to "protect[] plaintiffs from defendants who seek to evade sanction by predictable 'protestations of repentance and reform.'" *See Gwaltney*, 484 U.S. at 66 (citation omitted). However, the actions here taken by CM subsequent to the filing of BWR's suit **were not voluntary**. Instead, they were in direct response to an order entered by the state agency officially charged with the responsibility for dealing with water violations. BWR, like all other interested citizens, could have participated in the ADEM proceeding, which was started before BWR filed suit. What the difference, if any, in the order entered by ADEM would have been if BWR had not decided to put all of its eggs in the citizens suit basket, is a matter of speculation.

Whether this court, if there had been no ADEM consent order, would have reached the result reached by ADEM is also a hypothetical question not calling for an answer. This court cannot decide the question of mootness based on its agreement or disagreement with a valid, in place, administrative remedy, and is

not called upon to review the ADEM order as if it this court were an appellate court, reviewing the order under a deferential standard, or *de novo* with authority to substitute its judgment for the judgment of ADEM. There is no statutory basis for such a review by this court absent a challenge of the legality and legitimacy, vel non, of the ADEM order. Conspicuously, BWR has not attacked the consent order as being the product of collusion or of bad faith. The consent order, therefore, must be treated by this court as valid and enforceable. This court simply has no basis for criticizing the order, much less for ignoring it. If the court employed BWR's flawed reasoning, this citizen suit would preempt the ADEM order even if that order had provided the same relief BWR had sought. The truth is that while a citizen suit cannot preempt subsequent ADEM action, the reverse is not true. An ADEM order, if it provides meaningful relief of the sort being sought by the citizen, can and does preempt the citizen suit.

This case is strongly analogous to *Environmental Conservation Organization v. City of Dallas*, 529 F.3d 519 (5th Cir. 2008), in which an environmental group brought a CWA citizen suit against a municipality. Subsequently, the EPA served an administrative compliance order on the city and began negotiating toward a settlement. The terms of the settlement were put into a proposed consent decree that was submitted to a federal district court for its approval. After a notice and comment period, the district court

-8-

granted EPA's unopposed motion and entered a decree to which the violator had consented. While the EPA's administrative proceeding was pending, the citizen suit was also pending. After entry of the consent decree, the city moved for summary judgment. Its motion was granted on the basis of *res judicata*, an issue this court does not address. On appeal, the Fifth Circuit agreed that the dismissal of the citizen suit was proper, but held that the proper basis for the dismissal was mootness created by the intervening final administrative action initiated by the EPA.

The unhappy citizen group in *City of Dallas* urged the Fifth Circuit to apply the stringent standard for determining mootness that the Fifth Circuit had found only to be applicable when considering **voluntary** cessations of CWA violations. The Fifth Circuit noted that the city's compliance was "[f]ar from **voluntary**" and that "the actions that allegedly moot [plaintiff's] suit are actions of third parties (the EPA and a federal court), not those of the City." *See City of Dallas*, 529 F.3d at 528 (emphasis added). Reasoning that it "would not be relying solely on the City's assurances that it will not 'return to its old ways,'" the Fifth Circuit applied a test under which a citizen's "claims for relief are moot unless . . . (the citizen-suit plaintiff) proves that there is a realistic prospect that the violations alleged in its complaint will continue notwithstanding the consent decree." *See id.* ("Federal courts have long-recognized that allegations by a

-9-

defendant that its voluntary conduct has mooted the plaintiff's case require closer examination than allegations that . . . **official acts of third parties have mooted the case.**" (citing *DeFunis v. Odegaard*, 416 U.S. 312 (1974))(emphasis added). It is of little consequence that a court did not enter the instant ADEM consent order that punished CM's violations and that put remedies in place. Without the credibility determinations inherent in a full scale trial, the court has no reason to disbelieve CM's assurances that it will not further violate the CWA or other environmental laws. The Fifth Circuit's reasoning on this point is persuasive. The ADEM order came as a direct result of ADEM action. This court is unwilling to conclude that, despite ADEM's future oversight and CM's vulnerability to enforcement action, CM will violate the ADEM order so as to call for the overlapping CWA enforcement mechanism of an injunction.

ADEM urges the court to consider the intended role of citizen suits and the adverse repercussions of such suits if they are allowed to continue after ADEM has taken appropriate remedial action. Citizen suits are "meant to supplement rather than to supplant governmental action" by helping to ensure that agencies fulfill their CWA duties. *See Gwaltney*, 484 U.S. at 60. ADEM has acted. BWR, in effect, questions the scope of ADEM's consent order, ADEM's representation that CM has been brought into compliance, and ADEM's representation, mandated by law, that it will investigate

and monitor compliance. The court shares ADEM's concern that supplanting ADEM's enforcement authority would discourage polluters, after being threatened with action by a citizen, from thereafter negotiating with ADEM a consent disposition. The risk of exposure to duplicative penalties and double enforcement proceedings would only encourage an alleged violator to refuse to negotiate with ADEM after the violator has been sued, that is, if the violator knows that entering into a consent order will not extricate it from the expense and trouble of defending the suit.

Although the Eleventh Circuit in the earlier appeal of this case agreed with this court that BWR had the right to sue after ADEM proceedings had been initiated, neither this court nor the Eleventh Circuit held, expressly or by implication, that ADEM was prevented by the pendency of the citizen suit from negotiating a settlement with CW. In order for BWR to be allowed to pursue CW after entry of the ADEM order, BWR was obligated to demonstrate that there is a serious prospect that the CM violations described in its complaint will continue to occur notwithstanding the consent decree. BWR cannot meet this burden simply by criticizing the consent order as somehow inadequate, and by asking this court to assume a supervisory role over ADEM and CM. As stated *supra*, BWR has not challenged ADEM's good faith, and the court finds no reason to question it.

Deference should be paid not only to the consent order on its

face but to ADEM's representations (1) that the order resolved the violations alleged in BWR's suit, (2) that CM has been brought into compliance, (3) that CM's single subsequent violation does not allow for a reasonable inference that the violations alleged in the complaint will continue, and (4) that CM's change in sampling procedure should not be looked upon with undue suspicion. There is no convincing evidence that the current sampling procedures themselves violate any environmental law. Unless ADEM, the agency that is charged with enforcing the laws and regulations involving water quality in Alabama, is given deference, its reason for existence becomes problematic.

To allow BWR to engage in discovery relating to post-ADEM order water violations by CM would not only constitute an unwarranted acknowledgment by the court of the probability of continuing violations by CM, but would invite BWR to pursue this litigation into the indefinite future, with this court and BWR, in combination, taking over the functions of ADEM with respect to CM. BWR wants this court to deputize it to explore whether CM's current sampling procedures are a cover for continuing violations. Such an undertaking is much better left to ADEM.[3] In theory, ADEM and/or BWR, a year from now, can find water violations by CM far worse and far different than those found and corrected by the consent order.

---

[3]    It should be noted that even if BWR convinced the court that its suspicions regarding CM's new sampling procedures were correct, this alone would not save BWR's citizen suit. The court would have to find a probable link between this new activity and the violations set forth in the complaint.

If such should happen, both BWR and ADEM are free to act again.

To recapitulate, the consent order adequately addresses the violations alleged in BWR's complaint, and BWR provides no clear basis to infer that CM will continue to engage in the conduct complained of. Therefore, BWR's claims for injunctive relief are moot. *See Atlantic States Legal Found., Inc. v. Tyson Foods, Inc.*, 897 F.2d 1128, 1135 (11th Cir. 1990)("If, after the complaint is filed, the defendant comes into compliance with the Act, then traditional principles of mootness will prevent maintenance of the suit for *injunctive relief* as long as there is no reasonable likelihood that the wrongful behavior will recur.")

BWR, alternatively, argues that even if its claim for injunctive relief is moot, its claim for civil penalties should proceed. The court fully understands that, in cases of **voluntary** compliance, allowing civil penalty claims to go forward can serve (1) to ensure the effectiveness of a citizen suit deterrent, and (2) to discourage polluters from delaying compliance when no penalty will result if the violations cease before court disposition. *See Tyson Foods*, 897 F.2d at 1137. This rationale does not fit cases like this one in which the appropriate state agency has already assessed a monetary penalty against the polluter. The consent order required CM to pay a penalty of $15,000. Although $15,000 is not the maximum penalty permitted by the statute, *see* Ala. Code § 22-22A-5(18)c, if BWR were allowed to proceed in this

suit and were successful on the merits, this court would not be obligated to impose the maximum penalty. From a position of considerable strength, ADEM arrived at what it believed to be an appropriate penalty, after giving consideration to the list of relevant factors provided by the laws of Alabama and the United States. To allow BWR to make a separate claim for civil penalties would call upon this court to second-guess ADEM's evaluation of the proper penalty. *See Envtl. Conservation Org.*, 529 F.3d at 531 ("That [plaintiff] might have sought stiffer penalties against the City does not change the result; [plaintiff] is not permitted to upset the primary enforcement role of the [agency] by seeking civil penalties that '[the agency] chose to forego.'")(quoting *Gwaltney*, 484 U.S. at 61). For these reasons, BWR's claim for civil penalties will also be dismissed as moot.

CM separately argues that *res judicata* acts as a bar. The parties have extensively briefed this issue. Because the case is moot, the court finds no reason to address the theoretical question of whether a moot case is barred by *res judicata*.

## Conclusion

If there is a lesson to be learned from this case, it is that a citizen who admittedly has a right to file a citizen suit seeking to remedy a perceived water violation, although knowing, as a matter of law, that ADEM has concurrent jurisdiction over the issue, is taking the risk that he will be headed off at the pass by

-14-

subsequent appropriate ADEM enforcement action. If this hard lesson needs to be erased from the judicial blackboard, the erasure must be done by another.

This case having been rendered moot by the consent order entered into between ADEM and CM, CM's motion to dismiss for lack of subject matter jurisdiction will be granted.

DONE this 5th day of June, 2009.

WILLIAM M. ACKER, JR.
UNITED STATES DISTRICT JUDGE